Charles A. Loreto, J.
Upon an application of the judgment creditor to punish the third parties, Television Industries, Inc., its officers, Basil Estreich and Martin Schildkraut, and the judgment debtor, Matthew Fox, for contempt for violating the provisions of third-party orders (Civ. Prac. Act, § 781), the court made an order of reference to the late Nathan Gurock, Special Referee, and after his death, an order of reference to Leo Mullen, Special Referee, to hear and report. The judgment debtor and third parties move for confirmation of the Referee’s report and the judgment creditor cross-moves for disaffirmance and for an order granting her application to punish for contempt.
On February 15, 1960 a judgment in the amount of $68,268.53 was recovered by the judgment creditor against Fox. On February 19, 1960 a third-party order was served upon the corporate third party through its officer, Schildkraut, the treasurer of the corporation. Thereafter, on May 20, 1960, service of a similar third-party order was effected on Estreich, the senior vice-president of the corporate third party.
Fox is the president and chairman of the board of directors of the corporate third party, a publicly owned corporation (for convenience hereinafter referred to as Television). He is the owner of 35,000 shares of stock of the corporation, amounting to 10% of the issued stock, and holds options for a substantial *1023 number of additional shares of stock. There are about 26,000 stockholders of the corporation.
In 1959, Fox received advances from Television totaling $179,-500, of which he repaid $160,000 before the end of that year. On February 4, 1960, a short time prior to the entry of the judgment against him and the service of the restraining order upon Television, Fox received an advance on his salary from Television for six months, amounting to $15,000.
During the period from April 15 to May 10, 1960, Estreich received advances from Television totaling $21,225 against his annual salary of $26,000.
Subsequent to the service of the third-party order upon Television, it paid a bill of the Hotel Belair in Los Angeles, California, in the sum of $1,877.31 charged to the judgment debtor Fox, and caused a subsidiary thereof, C. & C. Films, Inc., to pay a bill of El Morocco, a night club in New York, in the sum of $390 charged to “ C. & C. Films, Inc., Att. Mr. Matthew Fox ”.
In his report, the Special Referee stated:
“ I look with strong suspicion upon the explanation by the third parties of their actions herein, and the claim of third party, Basil Estreich, that monies amounting to $21,225.00 were given by him to judgment-debtor, Matthew Fox, as personal loans without receiving a note or receipt therefor. However, a suspicion is not proof, and I believe it cannot be said that the testimony of the third parties is incredible as a matter of law.
‘ ‘ In my opinion, the judgment-creditor has failed to establish that the third party or the judgment-debtor violated any of the provisions of Sect. 781 of CPA ”.
The judgment creditor charges that the third parties and Fox, accomplished by indirection what they could not have properly accomplished directly, that is, effecting payment of large sums of money to Fox in violation of the third-party orders.
On the other hand, the third parties urge that at no time after the service of the third-party orders did Television or Estreich hold or transfer ‘ ‘ any property belonging to the judgment debtor or to which he may be entitled or which may thereafter be acquired by or become due to the judgment debtor ” in violation of the restraining orders (Civ. Prac. Act, § 781). It is claimed that the funds advanced to Estreich by Television were salary advances to Estreich and thereafter loaned by him to Fox. ‘ ‘ The motive or intent with which an act is done, where material, is generally a matter of inference depending on the nature of the act and the circumstances surrounding its *1024 commission * * *. Intent may be proved by facts and circumstances which characterize the transaction and from which the existence of intent may reasonably be inferred ” (20 Am. Jur., Evidence, § 337, pp. 313, 314).
The evidence shows that Fox had been able to obtain advances in large amounts from the corporation for his own personal use. In a brief time prior to entry of judgment and service of a third-party order on Television, he received $15,000 as an advance of six months’ salary.
The third-party orders having set up a roadblock to this avenue of funds to Fox, the third parties created an evasive channel through which funds would reach Fox.
What is revealed is not merely suspicion of a designed evasion of the restraining orders. The close relationship of the parties, the dominant posture of Fox, the financial operation or manipulations of the corporation before and after the service of the third-party order, constitute strands of evidence, the cumulative effect of which clearly reveals the intent and concerted plan of action. (See Stuart v. Hayden, 169 U. S. 1, 9.) Estreich, who never before had asked for or received salary advances from the corporation, then became the conduit through which money was siphoned to Fox.
Schildkraut blandly testified he gave money to Estreich totaling $21,225 within a period of less than a month as salary advances against his annual salary of $26,000, without inquiry as to his needs and purpose and as to how and when the money could be repaid. The advances to Estreich were made by Schildkraut by checks drawn on Television, cashed by Schildkraut and other personnel of the corporation, and then delivered to Estreich. He, in turn, transferred the cash to Fox.
If these advances were intended as payments against future salary, the question is posed as to why withholdings for taxes or other usual deductions were not made as required by law. Moreover, despite the advances to Estreich, the corporation continued to pay him his regular salary without interruption.
While the hearing before the Referee was in progress (Jan., 1961), Estreich effected a bookkeeping cancellation of the advances made to him. Estreich testified that “he arranged for the company, through Mr. Schildkraut, to take or to transfer to me sums of money that had accumulated in salaries due to Mr. Fox that he had not received and I, in turn, repaid the company from these amounts that were due him ”. The by-passage of the funds to Fox was thus completely effected and charged off on the books of the corporation against unpaid accrued salary of Fox.
*1025 Estreich’s explanation that the transfers of the funds to Fox constituted loans made to an old friend to whom he had made loans on many other prior occasions strains credulity to the utmost. Moreover, his testimony with respect to prior loans to Fox from his personal bank accounts was completely discredited when it was convincingly demonstrated that he permitted the accounts to be used as a “ conduit” for Fox’s funds much in the same manner that he siphoned the “ salary advances ” to Fox.
If a clever scheme or subterfuge, no matter how intricate, to avoid the court’s mandate is made apparent by the evidence, the court would be remiss in its judicial responsibility if it were to hold that absent direct evidence of violation of the order, it cannot find the conduct of the offending parties to be contumacious because all that is spelled out is suspicion. It is well known that in situations of this kind, the violation is rarely open and direct. It is devious and circuitous.
The court concludes that there is ample proof from which it should reasonably infer that the advances were for the use and benefit of Fox in contravention of the restraining provisions of the third-party subpoenas.
As to the payment by Television of the hotel and restaurant bills, the judgment creditor has not shown by clear and convincing evidence that these charg'es were for the personal benefit of Fox. They were not paid directly to or indirectly for Fox. A reasonable inference may be drawn that they were incurred by Fox in furtherance of the corporation’s business.
The motion to confirm the Referee’s report is denied, the cross motion to disaffirm is granted, and the motion to punish the third parties (excepting Estreich) and the judgment debtor for contempt is granted to the extent indicated. Estreich was not served prior to the transfers, nor has it been established that he participated with knowledge of the terms of the order.